# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS

| | |
|---|---|
| **THE SERVICE COMPANIES, INC.**<br>2900 Monarch Lakes Blvd. Suite 202<br>Miramar, FL 33027<br><br>                    Plaintiff,<br><br>v.<br><br>**NORMA L. BARAJAS**<br>401 Santos Street #1301<br>San Antonio, TX 78210<br><br>and<br><br>**WELLNESS CLEANING LLC**<br>830 Central Pkwy E., Suite 300<br>Plano, TX 75074<br><br>c/o Richard L. Meggs, Jr.<br>17000 Dallas Parkway, Suite 104<br>Dallas, TX 75248<br><br>                    Defendants. | Civil Action No. 4:24-cv-890<br><br>**JURY TRIAL DEMAND** |

## VERIFIED COMPLAINT FOR DAMAGES

Plaintiff The Service Companies, Inc. ("TSC" or "Plaintiff"), by and through its undersigned attorneys, hereby alleges as follows for its Verified Complaint against Defendants Norma L. Barajas ("Barajas") and Wellness Cleaning LLC ("Wellness," and together with Barajas, the "Defendants"):

## NATURE OF THE ACTION

1.     This action is the result of Defendants' misappropriation, disclosure, and unauthorized use of TSC's confidential information; violation of the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836, *et seq.*; violation of the Florida Uniform Trade Secrets Act, Fla. Stat. §

24654626

688.001, *et seq.*; tortious interference with TSC's business relationships; unfair competition with TSC; improper retention of TSC's property, which is subject to replevin; and Barajas' breach of her employment agreement.

2.      In late 2023 and early 2024, Wellness and/or Barajas developed a scheme to illegally interfere with and divert to itself an ongoing contract under which TSC provided staffing for a Caesars Enterprise Services, LLC ("Caesars") resort property in Cherokee, North Carolina.

3.      Wellness had a central problem — lack of insight and connection to Caesars. Specifically, Wellness had no visibility into Caesars' precise needs, no source for workers who could be relocated to work at the property, and no expertise in the complex logistics and challenges of such relocations. It also had little, if any, industry experience as it had only been formed in early 2023.

4.      Barajas solved all of these problems for Wellness: Barajas had knowledge of TSC's confidential information and practices relating to the staffing industry and had, through TSC, a relationship with Caesars.

5.       Consequently, Barajas and Wellness orchestrated a scheme whereby Barajas would use TSC confidential information and TSC's relationship with Caesars to divert TSC's business with Caesars to Wellness.

6.      Part of the scheme included Barajas using TSC confidential information to benefit Wellness both before and after Barajas left TSC.

7.      In furtherance of the scheme, Barajas informed TSC that she was leaving TSC to join a non-profit company that was focused on helping people in need and giving back to the community when, in fact, Barajas was joining Wellness and planning to use TSC confidential information to compete with TSC on behalf of Wellness and herself.

24654626

8.      Not surprisingly then, after her resignation from TSC under false pretenses, Wellness hired Barajas and Barajas immediately began running the project of staffing the Caesars' property. Based upon information and belief, Barajas used TSC confidential information, which she had taken with her to Wellness, to pitch Caesars to move its employee relocation and recruitment business from TSC to Wellness.

9.      This was not only a violation of trade secrets law, but also an extensive and brazen breach of Barajas's employment contract with TSC, which had noncompetition covenants. Barajas continues to violate these covenants.

10.     As a result of Barajas' illegal activity and Wellness' tortious competition and use of TSC confidential information, Wellness began supplying the same services to Caesars that TSC was providing to Caesars, and Caesars soon thereafter terminated its contract and relationship with TSC.

11.     Despite demands from TSC to cease and desist their use of TSC confidential information, and for Barajas to stop breaching her contract with TSC, Defendants have refused to do so. In fact, Wellness has stonewalled TSC in its effort to enforce its rights with respect to its trade secrets and agreements with Barajas, its former employee.

12.     As a result, TSC now brings suit against Defendants. Despite the extensive harm that Defendants have done through their wrongful conduct, TSC does not seek to disrupt the service Defendants are providing to Caesars. Instead, TSC seeks to be made whole in monetary terms, for the value of its stolen confidential information and the years of profit it would have received under a new contract if not for Barajas and Wellness' misconduct.

24654626

## PARTIES

13.     Plaintiff The Service Companies, Inc., is a Florida corporation with its principal place of business located in Miramar, Florida. TSC is a specialty vendor that operates at various hospitality, sports, and entertainment venues. Among other things, TSC runs housekeeping departments for casino resorts in remote areas. As part of this program, TSC offers certain relocation services to its employees who subsequently provide housekeeping services to these casinos (the "Relocation Program").

14.     Defendant Norma L. Barajas is a Texas resident and a former employee of TSC. While employed by TSC, Barajas helped develop the Relocation Program described in Paragraph 13. Barajas was exposed to, and used, TSC confidential information in developing the program. After working for TSC for nearly 2 years, including 11 months as a director in the recruiting/talent acquisition department for the casino housekeeping Relocation Program, Barajas left TSC and joined Wellness. Based upon information and belief, Barajas started an identical relocation program at Wellness.

15.     Defendant Wellness Cleaning LLC is a Texas limited liability company with its principal place of business in Plano, Texas. Wellness holds itself out as a cleaning agency that offers its services to various facilities, including hospitality facilities.

16.     Defendants are actively soliciting workers for at least one property previously serviced by TSC in Cherokee, North Carolina, namely Harrah's Cherokee Casino Resort ("Cherokee"), an affiliate of Caesars.

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction over this dispute, pursuant to 28 U.S.C. 1331, because TSC's claims against Defendants under the Federal Defend Trade Secrets Act, 18

4

24654626

U.S.C. § 1836, *et seq.*, raise a Federal question. TSC's remining claims fall within the Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, because the claims are so related to the Federal question that they form part of the same case or controversy.

18.     This court has personal jurisdiction over Defendant Barajas because she is a resident of Texas.

19.     This court has personal jurisdiction over Defendant Wellness Cleaning LLC because it is a Texas limited liability company.

20.     This court also has jurisdiction over all Defendants because the property stolen by Defendants was and, based upon information and belief, still is, located in the Eastern District of Texas.

21.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events giving rise to the claims in this Complaint occurred in this District and, as discussed above, Defendants are subject to the Court's personal jurisdiction in this District.

## FACTUAL BACKGROUND

22.     TSC is a specialty vendor that operates at various hospitality, sports, and entertainment venues. Among other things, TSC operates housekeeping departments for casino resorts in remote areas. As part of the Relocation Program, TSC offers certain relocation services to employees who provide those housekeeping services.

23.     TSC employs personnel to oversee those housekeeping programs, provide relocation services to potential employees, and manage relationships with facilities that TSC services. TSC prides itself in maintaining and expanding relationships with existing facilities and strategic partners, attracting and developing new customers, and developing future customer opportunities and strategic partnerships.

5

24654626

24.     TSC previously provided these services to three Caesars affiliated properties, located at: Cherokee, North Carolina, Lake Tahoe, Nevada, and Laughlin, Nevada.

25.     TSC expends considerable time, money, and effort to develop and maintain its customers' relationships, sales and marketing strategies, business development plans and corporate goodwill to grow its business and provide its housekeeping contracting services to its customers.

26.     As a result of TSC's efforts, and the unique employee Relocation Program TSC offers, many customers have been TSC customers for multiple years and were reasonably expected to continue as customers in the future. Specifically, the value added by the Relocation Program is a reason customers initially choose TSC and stay with TSC year after year.

**A.      TSC Hires Barajas as a Director of Operations, Then Promotes Barajas to Director of Field Talent Acquisition.**

27.     On July 5, 2021, TSC hired Barajas as Director of Operations assigned to a Caesars affiliated property located in Lake Tahoe, Nevada. On July 12, 2022, she was promoted to the role of Director of Field Talent Acquisition (People Business Partner) under the People Department (Human Resources). A true and accurate copy of Barajas' signed Offer Letter is attached hereto as **Exhibit 1**.

28.     TSC hired Barajas to assist with the management and provision of cleaning and janitorial services to casinos, hotels, lodging, and timeshare industries. Following her promotion to Director of Field Talent Acquisition (People Business Partner), a large part of her responsibilities included overseeing the Relocation Program.

29.     To this end, Barajas would assist TSC in evaluating employees for this program and managing the logistics of hiring employees from different geographic locations who were interested in relocating for work assignments at TSC hospitality customers who were in need of TSC services. Barajas was responsible for recruiting, interviewing, hiring, and onboarding

6

relocation associates through TSC's Relocation Program. Barajas managed the process and paperwork associated with the Relocation Program.

30.     Barajas was the perfect person to oversee the Relocation Program because she helped develop the Relocation Program.

31.     Naturally then, Barajas oversaw the Relocation Program at Caesars-affiliated properties at Cherokee, North Carolina, Lake Tahoe, Nevada and Laughlin, Nevada, as well as at a TSC customer location in Hawaii. In her role as Director of Operations at a Caesars property at Lake Tahoe from July 2021 through July 2022, Barajas was the primary TSC point of contact for Caesars Lake Tahoe.

32.     As the TSC point of contact, Barajas developed a close relationship with a Caesars' senior director of hotel operations; this relationship continued when the Caesars' senior director was promoted to regional vice president and transferred to Cherokee when Barajas was Director of Talent Acquisition with responsibility over Cherokee. Barajas would not have had access to these locations or the Caesars' vice president but for her employment with TSC. She also would not have had access to TSC confidential information but for her agreement to protect the confidential information and only use the confidential information on behalf of TSC.

33.     As Director of Field Talent Acquisition (People Business Partner), Barajas had daily access to TSC's confidential and proprietary information.

34.     TSC took steps to protect its confidential information by, among other things, requiring Barajas to sign the Proprietary Agreement. A true and accurate copy of the executed Proprietary Agreement is attached hereto as **Exhibit 2**.

35.     "Confidential Information," pursuant to the terms of the Agreement for Protection of Proprietary Information and Relationships ("Proprietary Agreement") is "any and all

24654626

information and records, data and trade secrets of [TSC] . . . as they may exist from time to time, or of customers, suppliers or other persons or entities [TSC] does business with, whether written, oral, electronic or in other tangible or intangible form" that are not publicly available and provide TSC with a business advantage as a result of not being publicly available. Examples of TSC confidential information include, but are not limited to, marketing techniques, recruiting techniques, accounts, customer or customer information, employee or employee information, contracts or agreements, data, housing documents, records, financial information, software, customer lists, prospective customer leads or lists and marketing fliers, prospective employee leads or lists, templates for hiring and interviews of prospective employees, product information, strategic business plans, business methodology and processes, especially those related to the H2B filing process and guidelines for relocation qualification, and costs and pricing policies ("TSC Confidential Information"). (Ex. 2, § 1(b).)

36.    Barajas had access to TSC Confidential Information in her role at TSC. She also had access to confidential employee personal information, which is another type of TSC Confidential Information.

37.    The Proprietary Agreement includes a confidentiality provision as well as a non-competition restrictive covenant. The Proprietary Agreement provides in pertinent part:

### 1.  Protection of Company Confidential Information

Employee will, at all times during the term of his or her employment with the Company and for a period of five (5) years immediately following the termination of his or her employment with the Company for any reason, regard and use his or her good faith efforts to preserve, as confidential, all Confidential Information obtained by Employee from whatever source, and **Employee will not, for any reason or purpose whatsoever use, publish, remove, copy or disclose to any person or entity any of such Confidential Information** without the express prior authorization of an executive officer of the Company[.]

8

(Ex. 2, § 1(a)) (emphasis added.)

38. The Proprietary Agreement further barred Barajas for competing with TSC within sixty miles of any location that TSC provides services for a period of two years:

### 2.  Protection of Company Business and Relationships

Employee…agrees to be restricted from competing with the Company following the termination of his or her employment with the Company, regardless of the reason for such termination and regardless of fault or any claim that either party may have against each other. Accordingly, during the term of Employee's employment with the Company and **for a period of two (2) years immediately following the termination of his or her employment with the Company for any reason** (the "Restrictive Period"), Employee agrees that he or she will not:

(a) **directly or indirectly** (whether for compensation or otherwise), engage in (as a principal, shareholder, partner, director, officer, agent, employee, consultant or otherwise), be financially interested in, or in any other capacity (a "Related Capacity"), **own, manage, operate, join, control or participate in the ownership, management, operation or control of, or furnish any capital to or be connected in any manner with, or provide any services as a consultant for, any business that is involved in the Business[1] and conducting business or proposing to conduct business within sixty (60) miles of any location at which Employee provides services to the Company** or has provided services to the Company (or the Predecessor Company) within the one (1) year period prior to termination of Employee's employment with the Company;

(b) **become an employee of, or consultant to, or otherwise provide services to, any customer of the Company**, in any manner related to the Business;

…

(d) **directly or indirectly, or in any Related Capacity, approach or solicit for business, accept business from, divert business**

---

[1] The Proprietary Agreement defines "Business" as "the business of managing and/or providing cleaning and/or janitorial services, in each case to the casino, hotel and/or lodging or timeshare industries, and/or to office buildings." (Ex. 2, recitals.)

9

> **from, or otherwise interfere with the relationship of the Company** with, any person or entity that:
>
> > (i) has been or becomes a customer of the Company at any time during the Restricted Period in any manner related to the Business or
> >
> > (ii) to whom the Company … made a proposal to provide services in Business within the one (1) year prior period prior to the termination of Employee's employment with the Company, in any manner related to the Business[.]

(*Id.* at § 2) (emphasis added.)

39.     Section 2(c) prohibits Barajas from soliciting TSC employees or otherwise hiring employees that were employees of TSC within the preceding three months:

> **2.  Protection of Company Business and Relationships:**
>
> Employee agrees that he or she will not:
>
> (c) directly or indirectly, or in any Related Capacity (i) approach, solicit, or attempt to induce any employee of the Company to leave the employ of the Company (other than a general solicitation not specifically directed at any employees of the Company) or (ii) hire (other than for the Company) any employee of the Company or any person who was a [sic] employee of the Company within three (3) months preceding the date of such hire.[]"

(*Id*. at § 2.)

40.     Finally, Barajas agreed to return all of TSC's Confidential Information and property upon the termination of her employment with TSC. (*Id*. at § 4.)

**B.     TSC Took Affirmative Steps to Protect Its Confidential Information.**

41.     While employed at TSC, Barajas had daily access to TSC Confidential Information, including lists of TSC customers, TSC documents, and information regarding TSC employees and prospective employees for TSC's Relocation Program.

42.     TSC implemented and promulgated the Proprietary Agreement, which set parameters for the use and disclosure of TSC Confidential Information.

43.     TSC Confidential Information is kept secure at TSC. For example, to access customer lists, employee and prospective employee lists, and other TSC Confidential Information, an employee must log onto their company-owned computer using their password.

44.     TSC has also undertaken considerable expense and effort to create TSC Confidential Information and to keep TSC Confidential Information secure and secret. TSC employees are required to enter into Confidentiality and Non-Solicitation Agreements, like the Proprietary Agreement, in exchange for employment and access to TSC Confidential Information.

45.     In fact, TSC required Barajas to sign a Confidentiality Agreement expressly acknowledging the "importance to [TSC] of safeguarding the confidentiality of such information." A true and accurate copy of the executed Confidentiality Agreement is attached hereto as **Exhibit 3**.

46.     As such, Barajas did not have access to TSC Confidential Information before joining TSC and only received access to TSC Confidential Information in exchange for agreeing to the above duties and obligations of protecting TSC Confidential Information.

**C.     Barajas Emails TSC Confidential Information to Herself While Planning to Depart TSC for Wellness.**

47.     TSC drafted and developed certain confidential documents in relation to the Relocation Program. These documents include offer letter templates, relocation offer letter templates, fliers for job fairs, employee interview guides, lists of approved H-2B employees, letters describing employee bonus programs, fact sheets, housing rules and regulations, lease templates, and housing trackers. This information is TSC Confidential Information.

24654626

48.     Barajas specifically developed or refined several of these documents while Director of Field Talent Acquistion (People Business Partner) at TSC, including, but not limited to, relocation offer letter templates, fliers for job fairs, employee interview guides, lists of approved H-2B employees, letters describing employee bonus programs, fact sheets, housing rules and regulations, lease templates, and housing trackers.

49.     Barajas had access to this TSC Confidential Information due to her role as Director of Field Talent Acquisition (People Business Partner).

50.     Unbeknownst to TSC, and without permission or authorization from TSC, Barajas emailed TSC Confidential Information, including the confidential documents identified in Paragraph 47, to her personal email account on March 19, 2022, April 26, 2022, June 23, 2022, July 6, 2022, July 7, 2022, July 13, 2022, August 4, 2022, August 8, 2022, and May 23, 2023.

51.     Barajas also emailed TSC Confidential Information relating to TSC employees and a prospective employee list, which included contact information for those who may participate in TSC's Relocation Program to her email account on April 14, 2023.

52.     In addition, between the months of November 2023 and July 2024, Barajas made numerous, periodic visits to Cherokee, Waynesville, and Asheville, North Carolina to conduct job fairs, onboard Relocation Program employees, secure employee housing, conduct training, and perform general oversight of operations pursuant to her employment with TSC.

53.     Barajas had no legitimate business reason for emailing TSC Confidential Information to her personal email account.

54.     Barajas never asked for, nor did she receive, consent from TSC to email TSC Confidential Information to her personal email account.

55.     Accordingly, Barajas sending TSC Confidential Information to her personal account is a direct violation of the Proprietary Agreement. (*See* Ex. 2, § 1.)

**D.      Barajas Resigns And Immediately Violates The Duties And Obligations She Owes TSC.**

56.     On or about June 19, 2023, Barajas resigned from TSC.

57.     In doing so, Barajas informed TSC that she had accepted a position with a non-profit company that focused on helping people in need and giving back to the community.

58.     In truth, Barajas had accepted employment with Wellness.

59.     Wellness is in the "business of managing/and or providing cleaning and/or janitorial services to the hotel and/or lodging industries" (defined as the "Business"). (*See* Ex. 2, recitals.)

60.     Wellness locations are within sixty (60) miles of the locations where Barajas worked for TSC.

61.     Accordingly, Barajas' employment at Wellness is a direct violation of Section 2(a) of the Proprietary Agreement. (*See id.* at § 2(a).)

**E.      Barajas Causes TSC Customers to Leave TSC And Use Wellness Instead.**

62.     Following Barajas' departure, at least one TSC customer began receiving services from Barajas and Wellness and subsequently terminated its relationship with TSC.

63.     The TSC customer was able to replace TSC with another vendor, despite that other vendor not offering the robust Relocation Program that TSC offered, because Wellness was now providing staff via a relocation program to both the TSC customer directly, as well as to the new vendor hired to replace TSC.

64.     Upon information and belief, Barajas used TSC Confidential Information, including the improperly emailed customer lists, employee lists, and confidential documents, to solicit TSC customers to join Wellness in violation of the Proprietary Agreement.

65.     Specifically, Barajas used TSC Confidential Information to create an identical employee relocation program through Wellness and to offer identical services to customers and TSC competitors at Wellness.

66.     Based upon information and belief, Wellness and Barajas relied on and used TSC Confidential Information to create an employee relocation program that is identical to TSC's Relocation Program and to solicit TSC customers to do business with Wellness.

67.     For example, Barajas solicited Caesars to do business with Wellness and Barajas in violation of Section 2(b) and 2(d) of the Proprietary Agreement. (*See* Ex. 2, §§ 2(b), 2(d).) Upon information and belief, Barajas and Wellness relied on TSC Confidential Information to earn Caesars' business.

68.     TSC has a long-standing relationship with Caesars – a 22-year partnership during which it has serviced more than 22 Caesars' properties. TSC provided and continues to provide certain housekeeping and janitorial services to Caesars' properties, pursuant to the terms of a Facilities Outsourcing Agreement dated as of January 1, 2021 (the "Facilities Agreement"), covering services at various Caesars properties that had entered into a Statement of Work with TSC under the Facilities Agreement, including, among other properties, Harrah's Laughlin in Laughlin, Nevada, and Harrah's Casino Lake Tahoe in Lake Tahoe, Nevada. Cherokee was serviced by TSC pursuant to a separate Service Agreement between Cherokee and TSC dated February 12, 2021.

69.     On July 31, 2023, TSC learned from Caesars that Caesars would be putting out a Request for Proposals for the services TSC provided.

70.     In December 2023, TSC learned that Barajas was soliciting its employees at Cherokee on behalf of another agency. TSC saw a photo of Barajas posted to social media at a

24654626

trade show with Wellness, and photos of Barajas on property at Cherokee, with Caesars' management participating in an event held by Wellness for employee onboarding.

71. Also in December, Barajas and Wellness posted the following job listings in an effort to find employees to fulfill the Caesars contract:

  a. Housekeeper Job in Cherokee, NC at Wellness Cleaning (ziprecruiter.com): https://www.ziprecruiter.com/c/Wellness-Cleaning-LLC/Job/Housekeeper/-in-Cherokee,NC

  b. Steward - Wellness Cleaning | Cherokee, NC (simplyhired.com): https://www.simplyhired.com/job/buOiFU_Ub6omI5eSpP8YSE6XNV6yOL0INaWr2SbtDKpb50WKrVuQzw

  c. Wellness Cleaning LLC Contract Manager in Cherokee, NC | 896566038 | Snagajob: https://www.snagajob.com/jobs/896566038

72. All job listings advertise an employment relocation opportunity. Upon information and belief, Barajas and Wellness used TSC Confidential Information to develop Wellness' relocation program.

73. Barajas and Wellness' provision of services to Caesars is a direct violation of Section 2(b) of the Proprietary Agreement. (*See* Ex. 2, § 2(b).)

74. Further, in her capacity as an employee of Wellness, Barajas accepted business from TSC's customer Cherokee. This is a direct violation of Section 2(d) of the Proprietary Agreement. (*See id.* at § 2(d).)

**F. Barajas Solicits TSC Employees To Join Wellness.**

75. Barajas also solicited employees of TSC to instead work for her at Wellness, in violation of Section 2(c) of the agreement. (*See id.* at §2(c).)

76. In December 2023, TSC learned that one of its employees had been solicited for, and accepted, an opportunity with "another agency under someone by the name of Letty." Barajas sometimes goes by Letty.

24654626

77.     On January 4, 2024, Barajas sent an email to a TSC employee on assignment in Kauai, Hawaii, including Cherokee's website and job applications through Wellness and R&R Ministries, and attaching a job description for the housekeeper position at Cherokee.[2]

**G.     Wellness Encourages Barajas To Violate Her Obligations To TSC.**

78.     Wellness knew that Barajas was subject to restrictive covenants during and after her employment at TSC.

79.     Wellness (1) encouraged Barajas to violate the restrictive covenants, or (2) deliberately turned a blind eye to Barajas violating the restrictive covenants.

80.     Wellness knew that Barajas had confidential information obligations regarding TSC Confidential Information.

81.     Nevertheless, Wellness (1) encouraged Barajas to violate her confidential information obligations, or (2) deliberately turned a blind eye to Barajas deliberately violating her confidential information obligations.

82.     Wellness received TSC Confidential Information.

83.     Wellness knew that it was not supposed to receive or possess TSC Confidential Information.

84.     Nevertheless, Wellness used TSC Confidential Information to compete with TSC.

85.     Just as disturbing, Wellness is in possession of TSC Confidential Information, is using TSC Confidential Information, and refuses to return TSC Confidential Information to TSC.

**H.     TSC Continues to Lose Business.**

86.     Defendants' actions have, upon information and belief, caused TSC customers to leave TSC to work with Barajas at Wellness.

---

[2] Upon information and belief, R&R Ministries is affiliated with Wellness.

87.     For example, Cherokee terminated its relationship with TSC and now relies on other third-party providers, including Wellness, to provide services previously provided by TSC.

88.     Despite requests from TSC to cease and desist, Defendants retain and refuse to return all TSC Confidential Information in their possession, custody, or control.

89.     Defendants' actions have caused, and will continue to cause, imminent irreparable harm to TSC. Barajas' solicitation of TSC customers also threatens to destroy the goodwill TSC has developed with its customers.

90.     Wellness continues to, upon information and belief, service TSC customers that Wellness obtained through its use of TSC Confidential Information.

91.     Barajas'—and by extension, Wellness'—actions have irreparably harmed TSC. The loss of its customer relationships has caused significant and irreparable harm to TSC.

92.     TSC has honored all its obligations in the Proprietary Agreement.

93.     Defendants have and continue to harm TSC's legitimate business interests, including TSC's Confidential Information, and goodwill.

**COUNT ONE**
**VIOLATION OF THE FEDERAL DEFEND TRADE SECRETS ACT**
**(AGAINST ALL DEFENDANTS)**

94.     Plaintiff incorporates by reference each allegation above as if fully rewritten herein.

95.     TSC Confidential Information is not available to the general public and is closely guarded by TSC. TSC keeps such information strictly confidential in order to maintain a competitive advantage over competitors.

96.     TSC Confidential Information is a trade secret under the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.*, (the "DTSA") because the information is not generally known outside

of TSC's business, TSC has taken reasonable measures to guard the secrecy of the information, the information is of great value to TSC and its competitors, TSC invested significant amounts of time, money and effort in developing the information, the information cannot easily be acquired or duplicated by others, and TSC continuously uses the information in its business.

97.     In particular, TSC's customer lists, employee and prospective employee lists, and employee relocation documents, among other information in Defendants' possession, is a trade secret under the DTSA. (*See* 18 U.S.C. § 1839(3).)

98.     TSC took reasonable efforts to maintain the secrecy of TSC Confidential Information, including the documents downloaded and shared by Barajas, by enacting and disseminating policies protecting TSC Confidential Information, utilizing the Proprietary Agreement and Confidentiality Agreement to ensure that its employees protect TSC Confidential Information, requiring passwords to be used on its computers, and utilizing software to protect and control TSC Confidential Information, among other ways.

99.     Barajas was contractually obligated under the Proprietary Agreement to return TSC Confidential Information to TSC immediately upon termination of her employment.

100.    Instead of complying with her duties and obligations, Barajas intentionally downloaded and emailed TSC Confidential Information to her personal email account in order to use TSC Confidential Information at Wellness.

101.    At the time Barajas misappropriated TSC Confidential Information, she knew that she was using improper means to acquire TSC Confidential Information in violation of her Proprietary Agreement with TSC.

102.    Barajas ignored, and continues to ignore, her contractual and legal obligations by continuing to possess TSC Confidential Information, use TSC Confidential Information to unfairly

24654626

compete with TSC, and provide TSC Confidential Information to third parties—including but not limited to Wellness—who are not authorized to receive, possess, or access TSC Confidential Information.

103.    Unless restrained, Barajas will continue to use, divulge, disclose, acquire, and/or otherwise misappropriate TSC Confidential Information.

104.    Further, Wellness knew that Barajas stole TSC Confidential Information.

105.    Wellness knew that its employees and agents could not possess or use TSC Confidential Information.

106.    Despite this knowledge, Wellness received and used TSC Confidential Information, and is continuing to use the stolen confidential information.

107.    Wellness is harming the value of TSC Confidential Information and TSC by continuing to possess and/or use the Confidential Information.

108.    It is axiomatic that if Barajas and Wellness are actively using TSC Confidential Information, then Barajas and Wellness have no intention of complying with the DTSA.

109.    Consequently, Barajas' and Wellness' actions constitute the actual and/or threatened misuse of TSC Confidential Information and trade secrets.

110.    Naturally then, TSC requests an order requiring Barajas and Wellness to return any and all TSC Confidential Information to TSC.

111.    Finally, Barajas' and Wellness' misappropriation of TSC Confidential Information has been willful and malicious, and TSC has incurred significant damages as a result of Barajas and Wellness' misappropriation.

112.    Barajas' and Wellness' actions have further damaged TSC Confidential Information, good will, reputation, and legitimate business interests.

113.    TSC is therefore entitled to recover not only compensatory damages in an amount to be determined at trial (but in excess of $75,000.00), but also punitive damages and attorneys' fees resulting from Barajas' and Wellness' wrongful misappropriation of TSC Confidential Information.

**COUNT TWO**
**VIOLATION OF THE FLORIDA UNIFORM TRADE SECRETS ACT**
**(AGAINST ALL DEFENDANTS)**

114.    Plaintiff incorporates by reference each allegation above as if fully rewritten herein.

115.    During the course of her relationship with TSC, Barajas was exposed to substantial amounts of TSC Confidential Information.

116.    This information is not available to the public and is closely guarded by TSC. TSC keeps this information strictly confidential in order to maintain a competitive advantage over its competitors, including Wellness.

117.    This information is considered a trade secret under the Florida Uniform Trade Secrets Act, Fla. Stat. § 668 *et. al.*, because TSC derives independent economic value from the information not being generally known to the public, the information is not readily ascertainable by proper means by other persons who could obtain economic value from its disclosure or use, and the information is the subject of reasonable efforts to maintain its secrecy.

118.    The economic value of TSC Confidential Information that Barajas had access to and misappropriated is in excess of $1,000,000.

119.    Defendants have misappropriated TSC's Confidential Information/trade secrets.

120.    Based upon information and belief, Defendants also engaged in other acts of misappropriation that will be revealed through discovery.

24654626

121.    TSC requests that this Court enter an order requiring Defendants to return any and all TSC Confidential Information in their possession, custody, or control.

122.    TSC has incurred significant damages as a result of Defendants' misappropriation of TSC Confidential Information.

123.    For example, TSC has lost several customers due to Defendants' misappropriation of TSC Confidential Information.

124.    Defendants' actions have also damaged TSC's goodwill, reputation, and legitimate business interests. TSC's damages, described above, are well in excess of $75,000.00, and TSC seeks monetary and economic damages provided by Fla. Stat. § 688.004.

125.    Finally, Defendants misappropriation of TSC's Confidential Information has been willful and malicious. As a result, TSC is entitled to recover its attorneys' fees from Defendants.

**COUNT THREE**
**TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS**
**(AGAINST ALL DEFENDANTS)**

126.    Plaintiff incorporates by reference each allegation above as if fully rewritten herein.

127.    TSC maintained ongoing business relationships with the TSC customers whose business Barajas and Wellness wrongfully solicited and/or obtained.

128.    Wellness had knowledge of TSC's business relationships with its customers.

129.    Barajas and Wellness intentionally and maliciously interfered with TSC's business relationships by using and misappropriating TSC Confidential Information to enter into relationships with TSC customers, and upon information and belief, making false, disparaging statements about TSC to its customers.

130.    By acting in the manner described above, Barajas and Wellness acted without privilege or legal justification.

24654626

131. By acting in the manner described above, Barajas and Wellness acted purposefully, with malice, and with the intent to financially harm TSC.

132. Barajas and Wellness' interference has caused injury to TSC's business relationships as some of its customers have left TSC for Wellness.

133. As a result of Barajas and Wellness' willful and wrongful conduct, TSC has been damaged in an amount to be determined at trial, but in excess of $75,000. Accordingly, TSC is entitled to compensatory and punitive damages in an amount to be determined at trial.

## COUNT FOUR
## UNFAIR COMPETITION
## (AGAINST ALL DEFENDANTS)

134. Plaintiff incorporates by reference each allegation above as if fully rewritten herein.

135. Barajas and Wellness' use of TSC Confidential Information, including but not limited to customer lists, employee and prospective employee lists, and employee relocation documents, is conduct which creates a likelihood of confusion or misunderstanding for TSC's customers and employees.

136. Barajas and Wellness' use of TSC Confidential Information, including but not limited to customer lists, employee and prospective employee lists, and employee relocation documents, further causes confusion or misunderstanding as to affiliation, connection, or association of Barajas, as a prior TSC employee, with Wellness.

137. Barajas and Wellness intended for TSC customers and potential customers, and TSC's employees and former employees, to rely on Barajas and Wellness' deception.

138. Barajas and Wellness' conduct as alleged herein constitutes unfair competition under Florida common law.

22

24654626

139.   Barajas and Wellness acted in willful, deliberate, and intentional disregard of TSC's rights.

140.   TSC is entitled to recover damages in an amount to be determined at trial, resulting from Barajas and Wellness' willful unfair competition in violation of TSC's rights.

**<u>COUNT FIVE</u>**
**REPLEVIN**
**(AGAINST ALL DEFENDANTS)**

141.   Plaintiff incorporates by reference each allegation above as if fully rewritten herein.

142.   Barajas and Wellness are currently in possession of TSC Confidential Information and property.

143.   Barajas and Wellness do not have any lawful justification to be in possession of TSC Confidential Information.

144.   TSC is the rightful owner of the aforementioned TSC Confidential Information and is entitled to the return of the TSC Confidential Information being wrongfully withheld by Barajas and Wellness. In other words, Barajas and Wellness' retention of TSC Confidential Information without lawful justification is a clear violation of TSC's rights.

145.   TSC made it clear to Barajas and Wellness that its continued possession of TSC Confidential Information is unauthorized and constitutes an unlawful act. TSC has also made several requests and attempts to retrieve its Confidential Information from Barajas and Wellness.

146.   Unfortunately, Barajas and Wellness refuse to return TSC Confidential Information.

147.   Accordingly, a replevin action is appropriate because TSC is being wrongfully deprived of its Confidential Information and seeks the return of its Confidential Information.

148.   Consequently, TSC requests that the Court enter an order: a) granting the immediate return of TSC Confidential Information to TSC; b) restraining Barajas and Wellness from further

23

interfering with or possessing TSC Confidential Information; and c) compensating TSC for any and all damages incurred as a result of Barajas and Wellness' unlawful possession of TSC Confidential Information (including TSC trade secrets).

## COUNT SIX
## BREACH OF CONTRACT
## (AGAINST DEFENDANT BARAJAS)

149.    Plaintiff incorporates by reference each allegation above as if fully rewritten herein.

150.    On or about July 3, 2021, Barajas entered into the Proprietary Agreement with TSC.

151.    The Proprietary Agreement is a valid and enforceable contract.

152.    Under the Proprietary Agreement, Barajas agreed to certain restrictive covenants in which she agreed to: (a) not use, copy, transfer, and/or disclose TSC's Confidential Information; (b) for a period of two (2) years following her separation from TSC not provide similar services within sixty (60) miles of any location that TSC provided services at within the one (1) year prior to her termination; (c) for a period of two (2) years not solicit any TSC employees or otherwise hire individuals who were TSC employees within three (3) months preceding the date of such hire; and (d) not solicit or accept business from TSC customers. (*See* Ex. 2.)

153.    The restrictive covenants found in the Proprietary Agreement are reasonable in scope and duration and are necessary to protect TSC's legitimate business interests in TSC's Confidential Information, goodwill, and longstanding customer relationships.

154.    TSC performed all of the duties and obligations owed to Barajas under the Proprietary Agreement.

155.    Barajas has breached, and continues to breach, the Proprietary Agreement by using and/or disclosing TSC's Confidential Information, soliciting TSC employees to join Wellness, and soliciting TSC's clients to work with Wellness.

24654626

156.    TSC has incurred significant damages as a result of Barajas' breach of the Proprietary Agreement.

157.    TSC is entitled to receive compensatory damages for Barajas' breaches of her contractual obligations.

158.    TSC demands trial by jury.

**WHEREFORE**, Plaintiff The Service Companies, Inc. respectfully requests that this Court:

1.    Enter an order requiring Barajas and Wellness to return all TSC Confidential Information in their possession, custody, or control to TSC;

2.    Enter judgment against Barajas and Wellness for compensatory damages in an amount to be determined at trial;

3.    Enter judgement against Barajas and Wellness for punitive damages in an amount to be determined at trial;

4.    Award TSC the costs and expenses, including reasonable attorneys' fees, TSC incurs as a result of Barajas and Wellness' violations of the Florida Uniform Trade Secrets Act and Defend Trade Secrets Act; and

5.    Award TSC such other relief as the Court may deem just and proper.

\*        \*        \*

25

Dated: October 4, 2024

Respectfully submitted,

*/s/ Mircea A. Tipescu*
Mircea A. Tipescu
J. Scott Humphrey (*pro hac vice* forthcoming)
**BENESCH, FRIEDLANDER, COPLAN &
      ARONOFF LLP**
71 South Wacker Drive, Suite 1600
Chicago, IL 60606-4637
Telephone: (312) 624-6420
mtipescu@beneschlaw.com
shumphrey@beneschlaw.com

James von der Heydt (*pro hac vice* forthcoming)
**BENESCH, FRIEDLANDER, COPLAN &
      ARONOFF LLP**
127 Public Square, Suite 4900
Cleveland, OH 44114
Telephone: (216) 363-4160
jvonderheydt@beneschlaw.com

24654626

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

24654626