# EXHIBIT 2

Barajas, Norma
Status: Pre-Start    Employee Number: 180996

Case 4:24-cv-00890   Document 1-2   Filed 10/04/24   Page 2 of 4 PageID #: 31

Barajas, Norma
Status: Pre-Start    Employee Number: 180996

**AGREEMENT FOR PROTECTION OF PROPRIETARY INFORMATION AND RELATIONSHIPS**

This Agreement is made on the date stated below by and between The Service Companies, a Florida corporation (together with its subsidiaries, collectively the "Company"), and myself ("Employee").

**WITNESSETH**

  **WHEREAS**, the Company is engaged in the business of managing and/or providing cleaning and/or janitorial services, in each case to the casino, hotel and/or lodging or timeshare industries, and/or to office buildings (collectively, the "Business"), and Employee possesses certain skills related to the Business;

  **WHEREAS**, the Company has extended an offer of employment to employ Employee, and Employee desires to become employed by the Company; and

  **WHEREAS,** it is a condition to Employee's employment with the Company that Employee enter into this Agreement with the Company, and, specifically, the Company would not agree to employ Employee or pay to Employee the compensation to be paid to Employee unless Employee enters into this Agreement with the Company.

  **NOW THEREFORE,** for and inconsideration of the premises and the covenants and agreements herein contained, the Company and Employee agree as follows:

1. **Protection of Company Confidential Information.**
  **(a)** Employee recognizes and acknowledges that, in the course of Employee's employment with the Company, Employee will have access to certain Confidential Information (as defined below) of the Company, that such information constitutes valuable, special and unique property of the Company, and that access to and knowledge of the Confidential Information are essential to preserve the goodwill and going business value of the Company.  Employee will, at all times during the term of his or her employment with the Company and for a period of five (5) years immediately following the termination of his or her employment with the Company for any reason, regard and use his or her good faith efforts to preserve, as confidential, all Confidential Information obtained by Employee from whatever source, and Employee will not, for any reason or purpose whatsoever use, publish, remove, copy or disclose to any person or entity any of such Confidential Information without the express prior authorization of an executive officer of the Company, except as necessary in the course of performing Employee's duties for the Company and then only in accordance with the policies of the Company concerning disclosure of Confidential Information in effect from time to time.
  **(b)** For purposes of this Agreement, "Confidential Information" means any and all information and records, data and trade secrets of the Company (including, without limitation, those of the Predecessor Company that have been acquired by the Company), as they may exist from time to time, or of customers, suppliers or other persons or entities the Company does, or the Predecessor Company did, business with, whether written, oral, electronic or in other tangible or intangible form; provided, however, the term "Confidential Information" does not include any information which is: (i) disclosed by the Company to other persons or entities on an unrestricted basis; (ii) is or becomes general public knowledge through no fault of Employee; or (iii) is or becomes available to Employee from a source (other than the Company, the Predecessor Company or their respective affiliates) that does not have a duty of nondisclosure, directly or indirectly, to the Company.
  **(c)** The provisions of this Section 1 will not prohibit disclosures that are required to be made by Employee under legal process by subpoena or other court order; provided, however, that: (i) Employee provides the Company with prompt notice of any such subpoena or proposed court order so that the Company may seek a protective order or other protective remedy; (ii) Employee will furnish only that portion of the Confidential Information that is legally required; and (iii) Employee will cooperate in such manner as the Company may reasonably request to obtain assurance that confidential treatment will be accorded to the Confidential Information.
2. **Protection of Company Business and Relationships.**  Employee acknowledges that the business of the Company is a service business, strongly dependent upon personal contacts with customers and potential customers of the Company, and the establishment of trust and confidence in a business relationship between employees of the Company and its customers.  Therefore, Employee recognizes the need to protect the Company from his or her competing with the Company, directly or indirectly, and agrees to be restricted from competing with the Company following the termination of his or her employment with the Company, regardless of the reason for such termination and regardless of fault or any claim that either party may have against the other.  Accordingly, during the term of Employee's employment with the Company and for a period of two (2) years immediately following the termination of his or her employment with the Company for any reason (the "Restrictive Period"), Employee agrees that he or she will not:
  **(a)** directly or indirectly (whether for compensation or otherwise), engage in (as a principal, shareholder, partner, director, officer, agent, employee, consultant or otherwise), be financially interested in, or in any other capacity (a "Related Capacity"), own, manage, operate, join, control or participate in the ownership, management, operation or control of, or furnish any capital to or be connected in any manner with, or provide any services as a consultant for, any business that is involved in the Business and conducting business or proposing to conduct business within sixty (60) miles of any location at which Employee provides services to the Company or has provided services to the Company (or the Predecessor Company) within the one (1) year period prior to termination of Employee's employment with the Company;
  **(b)** become an employee of, or consultant to, or otherwise provide services to, any customer of the Company, in any manner related to the Business;
  **(c)** directly or indirectly, or in any Related Capacity (i) approach, solicit, or attempt to induce, any employee of the Company to leave the employ of the Company (other than a general solicitation not specifically directed at any employees of the Company) or (ii) hire (other than for the Company) any employee of the Company or any person who was a employee of the Company within three (3) months preceding the date of such hire;
  **(d)** directly or indirectly, or in any Related Capacity, approach or solicit for business, accept business from, divert business from, or otherwise interfere with the relationship of the Company with, any person or entity that: **(i)** has been or becomes a customer of the Company at any time during the Restricted Period in any manner related to the Business or **(ii)** to whom the Company (or the Predecessor Company) made a proposal to provide services in the Business within the one (1) year period prior to the termination of Employee's employment with the Company, in any manner related to the Business; or
  **(e)** directly or indirectly, or in any Related Capacity, interfere with the relationship of the Company with, any person or entity that has been a supplier of the Company (or the Predecessor Company) at any time within the one (1) year period prior to the termination of Employee's employment with the Company, in any manner related to the Business.
3. **Reasonableness of Restrictions.**
  **(a)** Employee agrees and acknowledges that: **(i)** the Company has spent substantial money, time and effort (in each case, both directly and through its acquisition of the Predecessor Company) over the years in developing and solidifying its relationships with its customers and suppliers and in developing its Confidential Information; **(ii)** long-term relationships with customers and suppliers often can be difficult to develop and require a significant investment of time, effort and expense; **(iii)** the Company has paid its employees to, among other things, develop and preserve: **(A)** its business information and customer and supplier goodwill, **(B)** the loyalty of its customers and suppliers and **(C)** its customer and supplier contacts; and (iv) the Company is agreeing to employ Employee in part based upon Employee's agreement not to divert any of the foregoing during the periods provided under this Agreement.  Employee acknowledges that the restrictions contained in Sections 1 and 2, in view of the foregoing and the nature of the business of the Company, are reasonable in duration, geographic, services or product scope and in all other respects and are necessary to protect the legitimate interests of the Company, that the covenants of Employee contained in this Agreement have been made in order to induce the Company to employ Employee and the Company would not have employed Employee but for the covenants of Employee contained in this Agreement, and that any violation of any provision of this Agreement will cause irreparable harm to the Company.
  **(b)** Employee represents and warrants to the Company that Employee's experience and capabilities are such that the restrictions contained in Sections 1 and 2 will not prevent Employee from obtaining employment or otherwise earning a living at the same general level of economic benefit as earned with the Company.
4. **Return of Company Property at End of Employment.**  All equipment, supplies, correspondence, price lists, advertising brochures and material, customer and supplier lists, records (including but not limited to customer service records), customer leads, training and educational materials, and other documents, writings and articles of any sort for use in or relating to the Company's business, that have been, or hereafter may be, furnished to or acquired by Employee, whether wholly or in part through his or her own efforts or those of others, are and shall remain the sole and exclusive property of the Company, and Employee agrees to surrender and deliver all of the foregoing which are in Employee's possession or control to the Company at any time upon demand and, in any event, upon termination of Employee's employment with the Company, and in each case to destroy all electronic copies (if any) thereof that are in Employee's possession or control.
5. **Survival of Provisions.**  The termination of Employee's employment with the Company, regardless of the reason or manner of termination of employment, shall not relieve Employee of his or her obligations and restrictive covenants contained in this Agreement, including without limitation Sections 1 and 2, which shall remain in full force and effect for the time periods provided for therein.
6. **Assignment and Binding Effect.**  This Agreement will be binding upon, and inure to the benefit of, Employee and Employee's heirs, executors and legal representatives.  Because of the unique and personal nature of Employee's duties under this Agreement, neither this Agreement nor any rights, interests or obligations under this Agreement will be assignable or delegatable in whole or in part by Employee, by operation of law or otherwise.  Any attempt by Employee to assign or delegate any rights, interests or obligations under this Agreement will be null and void and of no force or effect.  This Agreement will be binding upon, and inure to the benefit of, the Company and its successors and assigns.
7. **Entire Agreement.**  This Agreement contains the entire understanding between the parties with respect to the subject matter of this Agreement, and supersedes all prior and contemporaneous agreements and understandings, inducements and conditions, express or implied, oral or written, with respect to the subject matter of this Agreement.
8. **Amendment.**  No purported amendment or modification to any provision of this Agreement will be binding upon the parties unless the Company, after having obtained the approval of an executive officer, and Employee have each duly executed and delivered to the other party a written instrument which states that it constitutes an amendment or modification (as applicable) to this Agreement and specifies the provision(s) that are being amended or modified (as applicable).
9. **Waiver.**  No purported waiver of any provision of this Agreement will be binding upon the Company or Employee (as applicable), unless the Company or Employee, as applicable, duly executes and delivers to the other party a written instrument which states that it constitutes a waiver of one or more provisions of this Agreement and specifies the provision(s) that are being waived.  Any such waiver will be effective only to the extent specifically set forth in such written instrument.  No delay on the part of either party in exercising any right, power or privilege under this Agreement will operate as a waiver of such right, power or privilege, nor will any waiver on the part of either party of any right, power or privilege under this Agreement operate as a waiver of any other right, power or privilege, nor will any single or partial exercise of any right, power or privilege under this Agreement preclude any other or further exercise of such right, power or privilege or the exercise of any other right, power or privilege.

**10. Governing Law.** THIS AGREEMENT AND ALL QUESTIONS RELATING TO ITS VALIDITY, INTERPRETATION, PERFORMANCE AND ENFORCEMENT WILL BE GOVERNED BY, AND CONSTRUED, PERFORMED AND ENFORCED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF FLORIDA, WITHOUT GIVING EFFECT TO ANY CHOICE OR CONFLICT OF LAW PROVISION (WHETHER OF THE STATE OF FLORIDA OR ANY OTHER JURISDICTION) THAT WOULD CAUSE THE APPLICATION OF THE LAWS OF ANY JURISDICTION OTHER THAN THE STATE OF FLORIDA.

**11. Remedies.** It is specifically understood and agreed that any breach or threatened breach of the provisions of this Agreement by either party will result in irreparable injury to the other party, that money damages alone will be an inadequate remedy for such breach or threatened breach, and that, therefore, in addition to any other remedies which the other party may have, the rights and obligations of the other party under this Agreement will be enforceable by a decree of specific performance issued by any court of competent jurisdiction, and appropriate injunctive relief may be applied for and will be granted in connection therewith, without the necessity of posting a bond or other security or proving actual damages and without regard to the adequacy of any remedy at law. No remedy conferred upon either party by this Agreement is intended to be exclusive of any other remedy, and each and every such remedy will be cumulative and will be in addition to any other remedy given under this Agreement or now or hereafter existing at law or in equity.

**12. Severability.** If any provision of this Agreement is found to be invalid, illegal or incapable of being enforced, in whole or in part, in any jurisdiction under any circumstances for any reason: (a) such provision will be reformed to the minimum extent necessary to cause such provision to be valid, enforceable and legal while preserving the intent of the parties as expressed in, and the benefits to such parties provided by, such provision; or (b) if such provision cannot be so reformed, such provision will be severed from this Agreement and an equitable adjustment will be made to this Agreement (including addition of necessary further provisions to this Agreement) so as to give effect to the intent as so expressed and the benefits so provided. Such holding will not affect or impair the validity, enforceability or legality of such provision in any other jurisdiction or under any other circumstances. Neither such holding nor such reformation or severance will affect or impair the legality, validity or enforceability of any other provision of this Agreement. Without limiting the generality of the foregoing, in the event that any provisions of Section 1 or 2 should ever be adjudicated to exceed the time, geographic, service or product limitations permitted by applicable law, the parties agree that the maximum time, geographic, service or product (as applicable) permitted by applicable law will be substituted for the time, geographic, service or product scope (as applicable) stated in this Agreement and the court will be authorized to revise the restrictions contained in this Agreement to instead cover only such time, geographic, service or product (as applicable).

Employee and the Company have executed this Agreement on the day and year first written below. Employee acknowledges that he or she has read and understands the provisions of this Agreement

**By checking the box below I hereby acknowledge that I read, understand and agree with the information stated above.**

File list is empty.

☑ I accept and acknowledge the company policy above.   **Date:** 7/3/2021

**Comment**
Add comment to the employee's file.

Case 4:24-cv-00890 Document 1-2 Filed 10/04/24 Page 4 of 4 PageID #: 33